IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 15-cv-01745-RPM

CHRISTOPHER HOBDY,

    Applicant,

v.

RICK RAEMISCH, Executive Director, Colorado Department of Corrections, and CYNTHIA COFFMAN, Attorney General for State of Colorado,

    Respondents.

---

## MEMORANDUM OPINION AND ORDER

---

Christopher Hobdy was convicted of first degree assault and aggravated robbery by jury verdict in March, 1998, in the District Court for Arapahoe County, Colorado. He was sentenced to 58 years imprisonment. The conviction was affirmed by a three-judge panel of the Colorado Court of Appeals (CCOA) in March, 2000. The opinion described the evidence substantially as follows:

The victim Jerry Williams was a retired police officer living in a hospice because he was suffering from terminal cancer. He went to a convenience store close to that residence near midnight. After his purchase he used a pay telephone outside the store where he encountered the defendant briefly. He was walking back to the hospice when he was struck from behind, knocked to the ground and his possessions fell to the ground. They were taken by the assailant. The victim went back to the store and asked the clerk to call 911 which he did. Williams then asked that an in-store video surveillance camera tape be retained and he gave the police his description of the

assailant. The police made three still photographs from the tape and Williams said they showed his assailant.

Williams gave the police an audiotaped interview the day after the attack. It was played to the jury. Because of his failing health and the expectation that he may die before trial, his deposition was taken pursuant to Colo. Crim. P. 15. He did die before trial and the transcript was read at trial with some deletions.

The CCOA found no errors in admission of this evidence. An additional issue on appeal was the failure to declare a mistrial after the jury reported that it was deadlocked. The CCOA referred to this issue as follows:

> During deliberations, the jury sent three notes–one requesting an opportunity to re-read the victim's deposition testimony, and two indicating that it was having difficulty in reaching agreement on a verdict. After discussing how best to respond to the jury, both parties agreed to have certain deposition testimony re-read to the jury.
>
> Thereafter, the jury informed the court that it was waiting for a response to its inquiry regarding its difficulty in reaching a verdict. The court stated that it would ask the jurors whether they were making any progress toward a unanimous verdict or whether they were deadlocked. Defense counsel indicated that he had no objection to that procedure. Thereafter, the trial court fashioned the following response, to which both parties agreed: "The court must ask you whether you are making any progress towards a unanimous verdict or are you deadlocked?"
>
> The jury replied to the court's inquiry by writing "deadlocked" on the note. The court then told counsel for both parties that it intended to give the jury an instruction in the form of COLJI-Crim. No. 38:14 (1983). Counsel for defendant sated, "Okay." The court then gave such an instruction, and defendant did not object. Nor did defendant move for mistrial based on the court's responses or the procedure it followed.
>
> Appendix N (Doc. 7-14), pp 11-12.

After referring to Colorado Supreme Court guidelines the CCOA held that the trial court proceeded properly and need not have declared a mistrial *sua sponte.*

Hobdy timely filed a Rule 35(c) motion in August, 2001, asserting ineffective assistance of trial counsel in failing to preserve a jury deadlock challenge and failure to call a medical expert to opine about the effects of the multiple medications the victim was taking on his ability to perceive, recall and relate information.

In that motion counsel advised that because the transcript of the trial had not been reviewed a supplement would be filed. That was done on July 5, 2005, as an amended motion. Additional claims were made and the claims of ineffective assistance of trial counsel and structural error in the handling of jury notes during deliberations were amplified. The district court denied both motions summarily. The CCOA on September 25, 2008, reversed because the trial court had not ruled on the merits of the timely filed Rule 35 (c) motion and it should have held a hearing to determine if the amended motion's untimely filing should be excused.

Pursuant to remand, a different district judge conducted an evidentiary hearing in January, 2011. The defendant produced the opinion testimony of Dr. William Alexander Morton as an expert in psychopharmacology as to the probable effects of the drugs Williams was taking on his central nervous system and the opinion testimony of Hugh Patrick Furman, as a legal expert opining as to the conduct of trial counsel in failing to investigate and present testimony of an expert witness such as Dr. Morton. The district court judge entered an order denying the motions on January 10, 2012, Appendix F (Doc. 7-6).

3

The district judge made findings of fact from the record in more detail than those recited in the CCOA opinion affirming the convictions. Of particular relevance here, the following paragraphs were included.

. . . .

> 8. Aurora Police Officer, Jerry Williams, the victim, was living in a hospice facility and receiving treatment for terminal cancer. On May 15, 1997, the victim checked out of the hospice to go to a nearby 7-11 store. He checked out at 12:40 a.m., and took his pain medication, Morphine, at 9:00 p.m. the night before.
>
> 9. The victim purchased a phone card and used the ATM in the store, exited, and used the pay phones located outside the store. The Defendant approached the victim, and asked for a quarter to use the phone. The Defendant then entered the 7-11 store.
>
> 10. Thereafter, the victim was returning to the hospice facility, when he was struck from behind, knocked to the ground, and robbed. The victim briefly gave chase, was unsuccessful in catching up to his attacker, and returned to the inside of the 7-11 store.
>
> 11. The police arrived at the scene, and pulled the 7-11 surveillance footage. The victim later identified the Defendant as his attacker from a still photo garnered from the surveillance footage. The police identified the Defendant as having been inside the 7-11 store roughly at the same time as the victim, and he was arrested on May 19, 1997.
>
> 12. The Defendant admits to being in the 7-11, but denies attacking the victim. According to the Defendant, he had been drinking at a nearby bar, and went to the 7-11. He later returned to the bar to meet his friends. Together, after leaving the bar, the Defendant and his friends visited the same 7-11 on their way home, where the police were still investigating the attack.
>
> ***
>
> 15. At trial, the Defendant's defense was misidentification. The thrust of the defense was that due to the substantial pain medication the victim was taking at the time, any identification or testimony on his part was not credible. The victim was established to be regularly taking Morphine, Haldol, Ativan, Robaxin, Dilantin, Benadryl, Decadron, and Reglan.
>
> 16. To rebut this defense, the People called two medical doctors. One doctor treated the victim at the emergency room after the attack, and the

4

other was the victim's regular oncologist. Together, they opined that the victim's mental faculties were not affected by the medications the victim was taking at the time of the attack such that they would impair his ability to make a positive identification.

17. The Defendant did not offer his own medical expert to refute the testimny of the two doctors called by the People. Trial counsel did cross examine the witnesses, based on medical records and drug information, and also elicited specific examples of the victim suffering from hallucinations, confusion, drowsiness, and other impairments related to his medications.

18. At the close of testimony, the case was submitted to the jury where they deliberated for more than two days. During deliberations, the jury sent out a number of notes. The record contains four of the notes. The notes reveal that the jury was having significant trouble reaching a verdict. They also state they were deadlocked, struggling with the credibility of the victim, and were "attacking each other."

*Id.* pp. 3-5.

The court applied the standard for determining ineffective assistance of trial counsel established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) and ruled as follows:

41. On balance, this Court finds to Defendant's claim that failing to retain a medical expert fell below the performance of reasonably effective assistance persuasive. The fact that the defense attorney was explicitly aware of the competency issue with regard to the victim, filed a motion to that effect, yet attempted to cross examine medical doctors on the effects, interactions, and side effects of powerful pain medications himself, lends itself to a determination of ineffectiveness. The People's medical expert testimony should not have been allowed to stand alone, especially given that the crux of Defendant's defense was attacking the victim's credibility. This Court is confident that, even when judged against the highly deferential standard outlined in *Strickland*, Defendant has overcome his burden with a preponderance of the evidence that trial counsel's assistance was constitutionally infirm. Therefore, this Court finds the Defendant prevails on the first prong of *Strickland*, being convinced that trial counsel's assistance was deficient, *and such deficiency prejudiced the Defendant.*

*Id.*, p. 10 (emphasis added).

Despite the emphasized language, the court went on to decide no prejudice in these paragraphs.

> 49. Returning to the *Strickland* standard, the second prong asks whether there is a reasonabiity [sic] probability that but for the unprofessional error of not having a defense medical expert, would there have been a different result? This Court is inclined to say no. The jury demonstrated, via several written jury notes, that they were having difficulty with the victim's credibility. They said they were "struggling coming to agreement with the credibility of [the victim and] ... have been debating this issue for most of the day." *Petitioner's Exhibit 3D*. Exactly what aspect of the victim's credibility the jury was debating is unclear. However, the jury, as composed of lay people, would have been aware of what morphine was, and what the effect of the drug is in very basic terms, at minimum. Having another expert, this one from the defense, to share complicated medical expert testimony, would not have materially changed their understanding with regard to the victim's testimony as credible. Defendant is speculating when he says the "attacking each other" note necessarily means they were attacking each other on the issue of credibility as it specifically relates to the type, number, and amount of medications the victim was taking at the time he was attacked.
>
> 50. Thus, this Court is convinced that while Defendant's failure to call a medical experrt of his own to refute that of the People may constitute professional error, this fact alone does not require granting the petition. The error is not a probable "but for" cause of a possible different outcome, nor does the error undermine the Court's faith in the result.

*Id.* p. 12.

In affirming dismissal of the motion the CCOA recognized that a claim of a violation of the Sixth Amendment presents mixed questions of law and fact. It referred to the district court's ruling on the first prong of *Strickland* in the following paragraph:

> Addressing the first postconviction motion, the court determined that the first attorney's performance had been deficient at trial. The court stated that the first attorney should have retained an expert to testify about the effect that the combination of drugs had on the victim's ability to perceive and to identify his assailant.

Immediately following that statement the appellate court reviewed the no prejudice ruling which it affirmed, adding additional reasons supporting that conclusion. Because the ruling on the first prong was not reversed, it stands as the state court's final determination which this Court is obliged to accept. 28 U.S.C. § 2254(e)(1).

The only issue to be determined here is whether the determination of no prejudice is contrary to or a misapplication of clearly established law as determined by the Supreme Court or a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

On the first question, it appears that the CCOA incorrectly considered it necessary for the defendant to show that the different result was required to be an acquittal. It said:

> ...Defendant did not establish that there was a reasonable probability that such testimony would have been the "ounce that makes the pound" that would have led the jury to acquit instead of to convict. See *Girtman*, 942 F.2d at 473; *Rimmer*, 59 So. 3d at 777; *Rolland*, 742 S.E.2d at 489; cf. *Newmiller*, 2014 COA 84 at ¶ 60.
>
> Appendix D, Doc. 7-4, p 18.

*Strickland* does not require a defendant to establish a reasonable probability that the jury would have acquitted, but rather that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. There are other possible outcomes, including a hung jury, which would have been more favorable for Hobdy.

In this case there is a reasonable probability there would have been a different result absent counsel's ineffective assistance. There would in all probability have been

7

a mistrial based on a hung jury–that is at least one juror having a reasonable doubt as to the credibility of the testimony of Jerry Williams.

To find Hobdy guilty of these crimes all twelve jurors had to believe that Williams correctly identified him as the assailant. There was no evidence to corroborate his story. The jury obviously had great difficulty in making that determination as revealed in the notes to the judge. Attached as Appendix A is one of the notes and the response (Doc. 43-3, p. 6).

The scenario described by the CCOA in the opinion on direct appeal is incomplete. The case was given to them late on Wednesday afternoon. By Thursday the jury began submitting a series of notes. The record is not clear as to the sequence in which the jury's notes were submitted. The court permitted the jury to hear a repeat reading of the transcripts of Williams' deposition, some of the taped statement of the defendant and view the surveillance tape. A modified *Allen* charge was read to them.

The transcript of the court proceedings on Friday, March 20, 1998, includes discussion with counsel of the arrangements made for reading the Williams deposition in the morning and in the afternoon a colloquy with counsel as to answering a jury inquiry about reasonable doubt, which was to tell the jurors to read the relevant instruction. The jury had also requested the testimony of a detective who testified during the playing of the tape of the defendant's statement. The response was that the court reporter was not available. The jury was then brought in and the portion of the tape that was played during the trial was again played. The jury was then sent back to the jury room.

The court advised counsel of its intent to send the jury home for the weekend at

8

"about 10 of 5:00" on Friday. At that time the court was reconvened and the judge sought approval of his going back to tell the jury to wrap up and go home for the weekend. He apparently did that, but did so outside of counsel's presence and without making a record. Thus there is no way to know what communications occurred between the judge and the jurors. Then on the record the court reported that the jury asked for more time. The verdict was then received very shortly thereafter at about 5:10 p.m. Doc. 43-3, pp. 20-24, attached as Appendix B.

The record also contains a note attached as Appendix C (Doc. 43-3, p. 3) with no indication of when or if it was received by the court and if there was any response to it. At any rate defense counsel was not made aware of it until post conviction proceedings. That note was recognized in the post-conviction ruling of the district court.

At oral argument counsel for the respondents could only speculate about that note, suggesting that it may not have been delivered to the judge and was simply found in the jury room.

This haphazard handling of jury questions, failure to inform counsel of a jury communication, and failure to make a proper record of exchanges between the judge and jury is structural error which requires vacation of the conviction. *See, e.g., United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). *See also French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003) (finding constitutional error where trial judge delivered a supplemental instruction to a deadlocked jury and defendant's attorneys did not have an opportunity to respond to the jury's note or be present when the trial judge gave the supplemental instruction).

For the foregoing reasons, the Court concludes that Christopher Hobdy received

ineffective assistance of counsel, in violation of the Sixth Amendment, and is accordingly "in custody in violation of the Constitution of the United States." 28 U.S.C. § 2254(a). He is therefore entitled to habeas relief. It is not necessary to consider the other claims and arguments submitted in support of this Application.

Exercising its discretion under 28 U.S.C. § 2243 to "dispose of the matter as law and justice require," the Court concludes that a conditional writ is appropriate. See *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("[T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.").

Accordingly, it is

ORDERED that Christopher Hobdy's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is granted. The State of Colorado must re-try Christopher Hobdy on the charges upon which he was convicted within 90 days from the entry of judgment, failing which he shall be released from custody on those convictions, which are vacated by this Court and upon which no further proceedings shall be pursued.

DATED: November 30, 2017

BY THE COURT:

*[signature]*

Richard P. Matsch, Senior District Judge

We are struggling with coming to agreement with the credibility of Jerry Williams' testimony. We have been debating this issue for most of the day. Since this testimony is key to coming to a concensus we believe that coming to a verdict will be difficult. Convictions remain firm on both sides. Due to evidence provided and its interpretation by individual jurors we are concerned that a verdict may not be attainable.

Answer

The court must ask you whether you are making any progress towards a unanimous verdict or you are deadlocked?

*Foreperson*
3-19-54

Deadlocked

App. A

0245

```
 1   transcript on Page 28.  It will be playing through --
 2             THE COURT:  Is the volume up high enough?
 3             MR. PORTMAN:  -- the next to last line on Page
 4   31.
 5             (Whereupon, the following proceedings were held
 6   in the presence and hearing of the jury.)
 7             THE COURT:  All right, good afternoon, ladies
 8   and gentlemen of the jury.
 9             We're going to play back that portion of
10   Mr. Hobdy's tape that was played to the jury during the
11   trial.  We've asked the assistance of the attorneys to
12   make sure we've got it queued right.  We need to make sure
13   that the volume is high enough, so if it's not high
14   enough, please raise your right hand.  Let's proceed.
15             (Whereupon, Defendant's Exhibit E was played for
16   the jury.)
17             THE COURT:  All right.  We'll send you back to
18   the jury room, ladies and gentlemen of the jury.  Ms.
19   Diggs will escort you back.  Thank you.
20             (Whereupon, the following proceedings were held
21   out of the presence and hearing of the jury.)
22             THE COURT:  We'll put Mr. Hobdy back in a cell,
23   if you could just wait out in the hallway.  If they don't
24   do anything, about 10 of 5:00 I'm going to send them home
25   for the weekend, tell them that the Court's unavailable
```

App. B

1   this evening, they can't stay this evening, if they get
2   into that.  We'll see what happens.
3           We've got one juror that's been up all night.
4   If they haven't got it by about 10 of 5:00, they need
5   to know the option; that is, to be sent home for the
6   weekend.
7           MR. PORTMAN:  I assume if you're going to tell
8   them that and they say we can reach a verdict in five
9   minutes, that scares me a little bit.
10          THE COURT:  If I say it's -- I'm going to say
11  it's ten minutes of 5:00.  The Court's going to send you
12  home for the weekend.  If they say they need additional
13  time, we'll have to deal with that when it comes up.  It's
14  an open-ended question.
15          MR. PORTMAN:  I've tendered Exhibit E back --
16  it's the cassette tape that we played -- back to the court
17  reporter.  This was labeled as an exhibit but not admitted
18  into evidence.
19          THE COURT:  Is there any other tape that we know
20  of that hasn't been played?
21          MR. TOPOLNICKI:  Not at this point.
22          THE COURT:  We'll be in recess until we can
23  start again.
24          (Whereupon, a recess was taken.)
25          THE COURT:  We're on the record on the Hobdy

1  matter. All parties are present. The Defendant is
2  present. It's ten minutes of 5:00. The jury's been
3  here since 8:30 this morning. The Court's intending
4  to send the jurors home and we need to agree on a
5  procedure.
6  　　　　The Court intends just to go back, tell the
7  jurors to wrap up and go home for the weekend and come
8  back at 9 o'clock Monday morning. If there's any
9  objections to that, I guess we'll bring them into the
10 courtroom. That's my suggestion. Is there any objection
11 to that?
12 　　　　MR. TOPOLNICKI: None from the People.
13 　　　　MR. PORTMAN: No, Judge.
14 　　　　THE COURT: If they say we need a few more
15 minutes, then I'll come back in and tell you what they
16 said. At this point I'm going to have them sent home for
17 the weekend, remind them not to discuss the case, and come
18 back at 9 o'clock. I don't want them here at 8:30 because
19 if we have jurors and all that to stand outside the door.
20 Let's do it at 9 o'clock.
21 　　　　Are the attorneys available?
22 　　　　MR. TOPOLNICKI: Yes. Could the Court advise
23 the jury not to visit the scene?
24 　　　　THE COURT: All right. I'll be right back.
25 We'll be in recess.

1  (Whereupon, a recess was taken.)

2  THE COURT: They want more time so I indicated
3  -- they were just going to hit the buzzer. We didn't talk
4  about times. They just indicated they'd like some more
5  time, so the Court indicated okay.

6  All right. Why don't you just remain here and
7  we'll see -- about 10 after I'll bring them in again.
8  They just indicated they'd like some more time, so the
9  Court indicated fine, hit the buzzer if they need us,
10 and that was it. Do you want to just keep him in here.

11 MR. TOPOLNICKI: I think we should give them
12 more time, Judge.

13 THE COURT: We'll be in recess.

14 (Whereupon, a recess was taken.)

15 THE COURT: Ladies and gentlemen, I understand
16 the jury has a verdict in this case. We'll bring the
17 jurors in. The Court will read the verdicts. I'd ask
18 that all parties not display any emotion, respect the
19 jury's verdict in this case.

20 All right. Let's bring the jurors in.

21 (Whereupon, the following proceedings were held
22 in the presence and hearing of the jury.)

23 THE COURT: All right. Good afternoon, ladies
24 and gentlemen of the jury. We're back on the record and
25 all parties are present. Please be seated.

1         Mr. Grinrod, might I assume you're the
2    foreperson since you have the paperwork?
3         JUROR GRINROD: Yes, sir.
4         THE COURT: Without revealing your verdict, has
5    the jury reached a verdict in this case?
6         JUROR GRINROD: Yes, we have, sir.
7         THE COURT: If you could give the paperwork to
8    Miss Otto, please.
9         This is case number 97CR2005, Count 1, People of
10   the State of Colorado versus Christopher Robin Hobdy. We,
11   the jury, find the Defendant, Christopher Robin Hobdy, not
12   guilty of criminal attempt to commit murder in the first
13   degree after deliberation and the lesser-included offense
14   of criminal attempt to commit murder in the second degree,
15   signed by the foreperson.
16        Count number 2, assault in the first degree, we,
17   the jury, find the Defendant, Christopher Robin Hobdy,
18   guilty of assault in the first degree. The jury further
19   finds did use or possess and threaten the use of a deadly
20   weapon during the commission of the crime or during the
21   immediate flight therefrom, signed by the foreperson.
22        Did cause serious bodily injury to Jerry
23   Williams during the commission of the crime or during the
24   immediate flight therefrom, signed by the foreperson.
25        Count number 3, aggravated robbery, we, the

Deliberations have broken down. We find ourselves attacking each other ~~which is no~~ not allowing ~~the~~ the us to move forward a verdict. We do not know where to go from here. We have examined all the evidence given to us and still are ~~dead~~ locked. We don't know what else to look at.

App. C